UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In re:  Case No. 09-59390
         Chapter 7
FRANK BARACCO,  Hon. Walter Shapero

    Debtor.
_____/

## OPINION GRANTING MOTION FOR STAY PENDING APPEAL

### Introduction

Frank Barracco ("Debtor") filed this Chapter 7 bankruptcy on June 19, 2009. JP Morgan Chase Bank ("Chase") is listed on Debtor's schedules as the only creditor. Chase's Second Amended Proof of Claim of $168,846.04 is based on a judgment against Del Vallo Construction, Inc. ("Del Vallo"), of which the Debtor was the sole shareholder. Prior to filing the bankruptcy, Debtor was alleged to have transferred various assets to his wife, including deeds to two properties and his interest in a personal injury settlement. The funds from the transfer of the two properties have been difficult to trace. However, $225,000 from the personal injury settlement, pursuant to an order entered on July 29, 2009 in a related adversary proceeding ("Adversary Proceeding Order"), is being held in an account at a federally insured financial institution in Debtor's wife's name until further notice of this Court. 09-05405, Dkt. 12.

On August 15, 2013 an order was issued sustaining debtor's objection to Chase's proof of claim. Dkt. 108. In the order, Judge Rhodes found that Debtor was not liable on the asserted debt because nothing in Michigan case law suggests that a fraudulent transfer can be categorized as a tort or that Michigan law would impose liability for a fraudulent transfer on a party who is

1

not a transferee. The Court's decision was based on Chase's inability to provide any authority or citation indicating otherwise. The Court also rejected Chase's alter ego theory, which undertook to hold the debtor personally liable for the debts incurred by Del Vallo, stating that "To allow this claim would allow Chase to use the law of alter ego to circumvent the limitation in fraudulent transfer law that restricts liability only to transferees." Dkt. 108 at 3-4.

The case was then reassigned from Judge Rhodes to this Court. Dkt. 107. On August 28, 2013 Chase filed its Notice of Appeal to the District Court and on September 6, 2013 Chase filed a Motion to Stay Pending Appeal Pursuant to Rule 8005 of the Federal Rules of Bankruptcy Procedure. Chase argues that the Court improperly concluded that a fraudulent transfer is not a tort relying primarily on *Sudden Service, Inc. v. Brockman Forklifts, Inc.*, 647 F. Supp. 2d 811, 817 (E.D. Mich. 2008) and *In re Bradley Estate*, 494 Mich. 367 (2013).

## **Discussion**

A stay pending appeal may be granted pursuant to Fed.R.Bankr.P. 8005, which states in relevant part:

> A motion for a stay of the judgment, order, or decree of a bankruptcy judge, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance. Notwithstanding Rule 7062 but subject to the power of the district court and the bankruptcy appellate panel reserved hereinafter, the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest.

Pursuant to Rule 8005, the Court applies a four factor test to determine whether to grant a motion for a stay pending appeal. These factors, as well as the proportionality of consideration that the Court may give to each, is comprehensively discussed in *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog,* 945 F.2d 150, 153-54 (6th Cir. 1991), stating:

2

In determining whether a stay should be granted under Fed.R.Civ.P. 8(a), we consider the same four factors that are traditionally considered in evaluating the granting of a preliminary injunction. These well-known factors are: (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay. These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together.

Although the factors to be considered are the same for both a preliminary injunction and a stay pending appeal, the balancing process is not identical due to the different procedural posture in which each judicial determination arises. Upon a motion for a preliminary injunction, the court must make a decision based upon "incomplete factual findings and legal research." Even so, that decision is generally accorded a great deal of deference on appellate review and will only be disturbed if the court relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard.

Conversely, a motion for a stay pending appeal is generally made after the district court has considered fully the merits of the underlying action and issued judgment, usually following completion of discovery. As a result, a movant seeking a stay pending review on the merits of a district court's judgment will have greater difficulty in demonstrating a likelihood of success on the merits. In essence, a party seeking a stay must ordinarily demonstrate to a reviewing court that there is a likelihood of reversal. Presumably, there is a reduced probability of error, at least with respect to a court's findings of fact, because the district court had the benefit of a complete record that can be reviewed by this court when considering the motion for a stay.

To justify the granting of a stay, however, a movant need not always establish a high probability of success on the merits. The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay. Simply stated, more of one excuses less of the other. This relationship, however, is not without its limits; the movant is always required to demonstrate more than the mere "possibility" of success on the merits. For example, even if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the defendant if a stay is granted, he is still required to show, at a minimum, "serious questions going to the merits."

In evaluating the harm that will occur depending upon whether or not the stay is granted, we generally look to three factors: (1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided. In evaluating the degree of injury, it is important to remember that

> [t]he key word in this consideration is *irreparable.* Mere injuries, however substantial, in terms of money, time and energy

> necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.
>
> Sampson v. Murray, 415 U.S. 61, 90, 94 S.Ct. 937, 953, 39 L.Ed.2d 166 (1974) (quoting Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n, 259 F.2d 921, 925 (D.C.Cir.1958)). In addition, the harm alleged must be both certain and immediate, rather than speculative or theoretical. In order to substantiate a claim that irreparable injury is likely to occur, a movant must provide some evidence that the harm has occurred in the past and is likely to occur again.

(internal citations omitted); *see In re McInerney*, 490 B.R. 540, 544 (Bankr. E.D. Mich. 2013); *Serv. Emps. Int'l Union Local 1 v. Husted,* 698 F.3d 341, 343 (6th Cir. 2012) (*per curiam*); *Baker v. Adams County/Ohio Valley Sch. Bd.,* 310 F.3d 927, 928 (6th Cir. 2002). Chase, as the moving party, bears the burden of establishing by a preponderance of the evidence that it is entitled to the stay. *In re Holstine,* 458 B.R. 392, 394 (Bankr. E.D. Mich. 2011). "[A] court's decision to [grant or] deny a Rule 8005 stay is highly discretionary." *Id.* (quoting *In re Forty–Eight Insulations, Inc.,* 115 F.3d 1294, 1301 (7th Cir. 1997)).

Factor No. 1: The likelihood that the party seeking the stay will prevail on the merits of the appeal.

Based on the record before the Court, and the *In re Bradley* decision by the Michigan Supreme Court on which Chase heavily relies for its appeal, this Court finds that there is a serious legal question going to the merits of the appeal. That decision presents a question of law as to categorizing a fraudulent transfer as a tort.

Chase asserts two legal concepts in support of its proof of claim. First, on the piercing the corporate veil theory, Chase contends that the Debtor should be held personally liable on the debt owed by Del Vallo. It is Chase's position that if a fraudulent transfer occurred, it is a tort, and therefore pursuant to Michigan law, a creditor can pierce the corporate veil to hold an officer personally responsible for any tort in which he participated. Dkt. 114. The second legal

4

09-59390-wsd    Doc 142    Filed 01/10/14    Entered 01/10/14 12:26:52    Page 4 of 7

argument that Chase asserts is that the Debtor used Del Vallo as an "alter ego" in order to fraudulently transfer Del Vallo's assets to his wife in order to escape personal liability.

In order for Chase to prevail on the piercing of the corporate veil and alter ego theories, it must first establish that a fraudulent transfer is a tort and further that a fraudulent transfer actually transpired. In regard to Chase's alter ego theory, Chase must go even further and provide a basis in law that finds the transferor liable in a fraudulent transfer cause of action. The fraud that Chase alleges in order to hold the Debtor liable for using Del Vallo as his instrumentality stems from the Debtor's transfer of assets to his wife. As part of its piercing the corporate veil theory, Chase cites *In re Bradley* in support of its contention that a fraudulent transfer is a tort. 494 Mich. 367 (2013). While this Michigan Supreme Court decision distinguishes a cause of action that arises from a breach of contract and a breach of a legal duty that results in a tort, the decision does not discuss the nature of a fraudulent transfer. *Id*. at 383 ("Michigan common law, which has its roots in English common law, has likewise recognized this distinction between torts and contracts as the two types of civil wrongs... when a party breaches a duty stemming from a legal obligation, other than a contractual one, the claim sounds in tort."). The Michigan Supreme Court establishes that "our common law likewise incorporates the concept that a tort necessarily involves compensation to an injured party for the wrong committed by a tortfeasor." *Id*. at 384. Ultimately concluding that "our common law has defined 'tort' to be a civil wrong, other than a breach of contract, for which the court will provide a remedy in the form of compensatory damages." *Id*.

Thus, there is some basis for Chase's argument that a fraudulent transfer is a civil wrong for which the Court can provide a remedy in the form of compensatory damages and, in this Court's view, satisfies this factor.

5

Factor No. 2: The likelihood that the moving party will be irreparably harmed absent a stay.

In order to show irreparable harm, three factors, set for above, must be evaluated. They include (1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided. *Griepentrog*, 945 F.2d at 155.

Chase claims that irreparable harm will result if the stay is not granted. As noted, the funds necessary to satisfy its claim are being held pursuant to the Adversary Proceeding Order. In a hearing on this present motion, the Debtor's attorney orally moved for a voluntary dismissal of the bankruptcy case. The Court declined to hear the issue as it was outside the scope of the hearing. Pursuant to 11 U.S.C. § 707, dismissal of a chapter 7 case on motion of debtor is discretionary, and debtor's motion should not be granted when prejudice to creditors would result. *In re Baylies*, 114 B.R. 324, 325 (Bankr. D.D.C. 1990). Chase has expressed concern that if a stay pending appeal is not granted, the Debtor will seek to voluntarily dismiss the case, which might subject the funds, currently being held pursuant to the Adversary Proceeding Order, to partial or total depletion. That is quite possible, maybe likely, and its prospect should be considered irreparable insofar as Chase is concerned, at least absent any safeguard put in place incident to a dismissal or denial of a dismissal.

Further, the interest of judicial economy makes it necessary to resolve this matter efficiently. Granting the stay pending the appeal to the District Court would allow for a final determination of the merits of Chase's claim and all the proceedings relating to that claim.

Factor No. 3: The prospect that others will be harmed if the Court grants the stay.

The Court finds that harm to others will not result if it grants the stay pending appeal, as Chase is the only creditor in this Chapter 7 case. The Debtor asserts that he and his wife are being harmed due to the funds having been held since 2009. The Court concludes that a stay

pending appeal will likely accelerate prompter resolution of the issue so that there can be a final determination on the deposition of the funds.

Factor No. 4: The public interest in granting the stay.

This is either not a factor in this case, or, if it is one, it carries little comparative weight in any event

## Conclusion

Applying and properly balancing the indicated factors, the Court grants Chase's motion. Chase shall prepare and present an appropriate order under the local rules.

.

**Signed on January 10, 2014**

                                                          **/s/ Walter Shapero**
                                   **Walter Shapero**
                                   **United States Bankruptcy Judge**